## Patrick Kennedy v. Mary Murphy.

### Gen. No. 4,233.

1. DISCHARGING WATER UPON ANOTHER'S LAND—*when liability for, exists.* Where one landowner causes water to be discharged upon the land of an adjoining owner at a point where such water would never have flowed in a state of nature, and where such owner, likewise, discharges water thereon which would not have gone upon such land by following the natural depression of the land, such injured landowner is entitled to nominal damages even if the result was beneficial to his land, and is, likewise, entitled to whatever actual damages he may have sustained.

2. CROSS-EXAMINATION—*what proper upon.* Questions which tend to show the interest of witnesses testifying, are competent upon the cross-examination of such witnesses.

Action commenced before justice of the peace. Appeal from the Circuit Court of De Kalb County; the Hon. HENRY B. WILLIS, Judge, presiding. Heard in this court at the October term, 1903. Reversed and remanded. Opinion filed October 23, 1903. Rehearing denied and additional opinion filed April 7, 1904.

JONES & ROGERS and J. E. MATTESON, for appellant.

CLIFFE & CLIFFE and JAMES W. CLIFFE, for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

Kennedy owned land in DeKalb county; Larson owned land next west; and O'Brien owned land next north of the Kennedy and Larson lands. The natural flow of surface water over said lands was from northwest to southeast. In a state of nature the water which flowed from the O'Brien land left it at about the northeast corner of Larson's and northwest corner of Kennedy's in a natural depression, and crossing the corner only of Larson's ran southeasterly across Kennedy's land to a stream below. Kennedy and Larson had dug a ditch which began at or about the line between them and about thirty-three rods south of their north line, and ran easterly and a little southerly about eighteen rods to the depression wherein the water from the O'Brien land flowed. The surface in this depression on Kennedy's and

Larson's lands, near their north line, was a little higher than the surface of that depression on O'Brien's land, so that' some water would stand on the O'Brien land till it evaporated or seeped away. If this rim had been on the O'Brien land he would have had a right to cut through it in the line of the natural depression, and discharge this standing water upon Kennedy's land. Peck v. Herrington, 109 Ill. 611. But the rim or higher land which held back this water was not on his land and he could not lawfully go upon the land of the others and cut a ditch to let the waters off his land. O'Brien was a minor. His guardian, Mrs. Mary Murphy, caused a ditch to be dug south about thirty-three rods on the Larson land and just west of Larson's east line, and laid tile therein, and then discharged it into the open ditch cut by Kennedy and Larson, and thus cast upon Kennedy's land at that point the waters which collected upon the O'Brien farm. Mrs. Murphy directed this work and paid for it. This is a suit brought by Kennedy against Mrs. Murphy for the damage which he alleged was thereby inflicted upon his land. He recovered $96 damages before a justice, but on a jury trial in the Circuit Court on appeal there was a verdict for defendant. A motion by plaintiff for a new trial was denied, and there was a judgment against plaintiff for costs, from which he appeals.

By the course pursued Mrs. Murphy cast the waters from the O'Brien land upon Kennedy's land, not in the depression where they were accustomed to run, from his north line southeasterly across his land, but at a point on his west line thirty-three rods south of his north line, and eighteen rods west of where the depression ran at that distance south of his north line, and where said waters never would have gone in a state of nature. If O'Brien had owned the Larson land he would have no right to convey these waters to that point by an artificial ditch cut through higher land, and discharge them upon Kennedy's land at that place, and no consent obtained from Larson could give O'Brien that right. By this ditch Mrs. Murphy also brought upon Kennedy's land, waters which she could not have got upon his land at his north line by any ditch she could have cut in

the natural depression, but which must have stood upon O'Brien's land. She has dug around the rim of higher land along Kennedy's north line, and discharged the waters thirty-three rods further south, where his land is lower. This she had no right to do. In two respects therefore, Mrs. Murphy violated Kennedy's rights; she discharged waters upon his land at a point where they would never have flowed in a state of nature, and she discharged waters there which could not have been got upon his land at all by following the natural depression, but which would have remained standing upon the O'Brien land. There is practically no dispute in the proof on these points. Therefore, Kennedy is entitled to recover damages for these wrongful acts. The verdict cannot be supported by the testimony of witnesses that it did his land no harm. The invasion of his right would entitle him to nominal damages even if the result was beneficial to his land. Mrs. Murphy could not decide how Kennedy's lands should be improved, and for that purpose change the place nature had provided for discharging upon his land the waters from the O'Brien land. There was also proof that Mrs. Murphy's ditch at its outlet was cut a short distance into Kennedy's land. Other proofs denied this. If it was so cut, that act also gave Kennedy a cause of action.

Certain witnesses for defendants had tiled their lands into the O'Brien farm so that the water discharged from said tile would flow upon plaintiff's land through the ditch of which complaint is here made. On cross-examination they were asked if they had paid anything to discharge their ditches into the O'Brien land. The court sustained an objection to those questions and refused leave to plaintiff to prove money had been so paid. We think the questions were proper cross-examination to show the interest of the witnesses in the event of the suit. If any of this water would have naturally flowed off some other way, and not through this depression, that fact would also have been competent original testimony for plaintiff.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

In disposing of a petition for a rehearing the following additional opinion was filed:

PER CURIAM. Appellee has filed a petition for a rehearing in which she insists that the testimony of her witnesses escaped our attention. On the contrary that testimony was given the fullest attention, not only as set out in the abstract and in the additional abstract and in appellee's briefs, but also as it appears at large in the record. It is perhaps true that the expression in our foregoing opinion, that there is practically no dispute in the proof on certain points, may be too strong. Some of appellee's witnesses said that in a state of nature the water from the O'Brien land passed along the same line where appellee caused the tile to be laid, and that all the water the tile carried was before that discharged into this same open ditch. Others, however, showed that neither of these statements was wholly true. It is true that in a state of nature what water escaped from the O'Brien farm reached appellant's open ditch at some point on his lands. But the levels given on the surveyor's plat were not contradicted, and they showed that at the boundary between the O'Brien land on the north and the Larson and Kennedy lands on the south the land was higher than further north on the O'Brien land, so that in a state of nature part of the water on the O'Brien land could not flow upon the Larson and Kennedy land; and some of defendant's witnesses admitted that in a state of nature water stood upon the O'Brien land for considerable periods of time, from which it follows that the tile ditch casts upon appellant's land, water which otherwise would not have reached it. Again, the plat and levels of the surveyor showed that what water left the O'Brien land reached Kennedy's open ditch 300 feet (or eighteen rods) east and slightly south of where the open ditch passed from the Larson land into the Kennedy land. We think it evident most of appellee's witnesses only meant that in a state of nature the water from the O'Brien land finally got into Kennedy's open ditch at some point, and not that it reached that ditch at the line between Larson and Kennedy. Her

witness, Larson, expressly stated it did not use to flow into the open ditch at that point, and that her tile ditch was cut through a rise in the ground, thus confirming the plat. The water which left the O'Brien land did originally run for a distance of some 200 feet near the line between Larson and Kennedy, so that those who said it ran on the same line before and after the tile was laid told a partial truth, but the plat shows the natural waterway then turned off and ran in a southeasterly direction, while appellee caused the tile to be continued 300 feet further south, inside Larson's line, and through a rise in the ground. By that means the water reached appellant's land at a point where it had never come before. We regard it as entirely clear that according to the proof in this record, appellant has a cause of action. The petition for a rehearing is denied.